## FUHRMAN LAND CO. et al,
*Petitioners - Cross-Respondents,*

*v.*

## WATERY LANE HOMEOWNERS ASSOCIATION,
*Respondent - Cross-Petitioner,*

(LUBA No. 80-066, CA A20574 (Control))

## CITY COUNCIL OF THE CITY OF PORTLAND,
*Petitioner - Cross-Respondent,*

*v.*

## WATERY LANE HOMEOWNERS ASSOCIATION,
*Respondent - Cross-Petitioner.*

(LUBA No. 80-066, CA A20623)
(Cases Consolidated)

641 P2d 657

Frank V. Langfitt, III, Portland, argued the cause for
petitioners - cross-respondents, Fuhrman Land Co., LFC,

Inc., HTK, Inc., DWK, Inc., and Dean Loney. With him on the briefs was Lindsay, Hart, Neil & Weigler, Portland.

Ruth Spetter, Deputy City Attorney, Portland, argued the cause for petitioner - cross-respondent, City of Portland. With her on the briefs was Christopher P. Thomas, City Attorney, Portland.

William Dickas, Portland, argued the cause and filed the brief for respondent - cross-petitioner.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Petitioner City Council of the City of Portland (City) and petitioners Fuhrman Land Company, et al (Developers) seek judicial review of an order by the Land Use Board of Appeals (LUBA). LUBA ruled that a provision of the City Code, § 34.110.020,[1] restricting the right of appeal of a minor partition to the applicant, conflicts with ORS 92.046(3).[2] LUBA thereupon remanded the matter to the City to hold a hearing, as requested by respondent Watery Lane Homeowners Association.

At the heart of this dispute is the contested right to lease from the state submerged lands in the Willamette River adjoining Developers' condominium project is known as Sellwood Harbor Condominium. The submerged lands underlie a houseboat moorage occupied, at the relevant times, by members of Watery Lane Homeowners Association, as lessees. On February 29, 1980, the City's planning

---

[1] Section 34.110.020 provides:

"(A) The decision of the planning director to deny or approve with conditions a minor partition map may be appealed to City Council *by the applicant* within 10 days following such decision. The planning director's decision is effective on the 11th day after rendering unless appealed to the City Council.

"(B) An appeal may be made *by the applicant*, in writing, to the City Council. Appeals shall state specifically how the planning director failed to make an appropriate affirmative finding as specified in section 34.30.030(A) of this title.

"(C) The City Council shall hold a public hearing on any such appeal. The city auditor shall mail notices to all owners of real property within lines 150 feet, including intervening streets, from and parallel to the boundaries of the minor partition and such other contiguous property as is under the control of the applicant, and the appropriate neighborhood associations." (Emphasis added.)

[2] ORS 96.046(3) provides:

"The governing body of a city or county may provide for the delegation of any of its lawful functions with respect to minor partitions to the planning commission of the city or county or to an official of the city or county appointed by the governing body for such purpose. If an ordinance or regulation adopted under this section includes the delegation to a planning commission or appointed official of the power to take final action approving or disapproving a tentative plan for a minor partition, *such ordinance or regulation shall also provide for appeal to the governing body from such approval or disapproval* and require initiation of any such appeal within 20 days after the date of the approval or disapproval from which the appeal is taken." (Emphasis added.)

director approved Developers' request for a minor partition which had the effect of separating ownership of the riparian strip of land from the condominium property, leaving the riparian rights in the Developers rather than in Sellwood Harbor Condominium Homeowners Association.[3] On March 4, 1980, Watery Lane, by letter, purported to appeal what it termed the improper approval of the amended condominium plat and minor partition map. Treating the letter as a communication, the City Council, on March 22, 1980, denied Watery Lane's request for a hearing on the ground that the City Code allowed an appeal to be taken from approval of a minor partition only by the applicant. On June 23, 1980, Watery Lane filed a notice of intent to appeal with LUBA. LUBA remanded the matter to the City for a hearing.

On appeal, the City and Developers make a number of contentions involving LUBA's jurisdiction, the standing of Watery Lane Homeowners Association before LUBA, the timeliness of the appeal and the effect of ORS 92.046(3). Watery Lane contends that LUBA's order of remand was not a final appealable order, yet also cross-appeals from it. Because we hold that LUBA lacked subject matter jurisdiction, we need not consider any other contentions.

In response to the argument of the City and Developers that Watery Lane should have sought LUBA review of the minor partition decision, LUBA ruled that Watery Lane "preserved" its right to appeal to LUBA from the denial of a hearing, because the association was entitled to rely on ORS 92.046(3), which, in LUBA's view, required the City to provide an appeal route at the local level to other than applicants for a minor partition. That analysis begs the question of jurisdiction. LUBA's subject matter jurisdiction, at the time of this proceeding, was limited by Oregon Laws 1979, chapter 772, section 3:

"(1)  'Land use decision' means:

"(a)  A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

---

[3] Ownership of the riparian strip apparently confers priority in bidding for the lease.

"(A)  The state-wide planning goals;

"(B)  A comprehensive plan provision; or

"(C)  A zoning, subdivision or other ordinance that implements a comprehensive plan; or

"(b)  A final decision or determination of a state agency other than the Land Conservation and Development Commission, with respect to which the agency is required to apply the state-wide planning goals.

"(2)  'Person' means any individual, partnership, corporation, association, governmental subdivision or agency or public or private organization of any kind."

■ ■  In *Fisher v. Colwell,* 51 Or App 301, 305, 625 P2d 1333, *rev den* 291 Or 117 (1981), we held that a local decision made prior to adoption of a comprehensive plan was not reviewable by LUBA where no contention presented by the parties concerned application of the state-wide goals. This is a similar case. Because the parties did not present any goal issue in their petition for review before LUBA,[4] LUBA had no subject matter jurisdiction over this dispute. *Fisher v. Colwell, supra.*

---

[4] Two state-wide goals are discussed by the parties on appeal, Goal 15 (Willamette River Greenway) arguably relates to the merits of the minor partition, but the subject of this proceeding concerns the denial of a hearing, not the merits of the minor partition decision. Moreover, Goal 15 was not raised anywhere below. The other state-wide goal argued on appeal conceivably relates to the denial of a hearing: Goal 1 (Citizen Involvement). No mention was made of Goal 1 in the petition before LUBA. During the LUBA hearing, the referee asked the City's attorney if Goal 1 required the city to hold a hearing; the response was negative. That was the only reference to Goal 1 made in the LUBA proceeding.

Goal 1 provides:

"GOAL: To develop a citizen involvement program that insures the opportunity for citizens to be involved in all phases of the planning process.

"The governing body charged with preparing and adopting a comprehensive plan shall adopt and publicize a program for citizen involvement that clearly defines the procedures by which the general public will be involved in the on-going land-use planning process.

"The citizen involvement program shall be appropriate to the scale of the planning effort. The program shall provide for continuity of citizen participation and of information that enables citizens to identify and comprehend the issues.

"Federal, state and regional agencies and special purpose districts shall coordinate their planning efforts with the affected governing bodies and make use of existing local citizen involvement programs established by counties and cities."

Even had Goal 1 been properly raised, it does not on its face impose a requirement that every local action be accompanied by a hearing. Goal 1 requires that local governments provide for citizen involvement, such as participation in

Reversed and remanded with instructions to dismiss.

advisory groups, in the course of the comprehensive planning process. The ultimate effect of respondent's proposed interpretation of Goal 1 would be to make any and every local action reviewable by LUBA upon the mere contention that Goal 1 requires a hearing.